# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

## WESTERN DIVISION

**APRIL NORMAN**

2604 Ardmore Avenue

Cincinnati, Ohio 45237

    **Plaintiff**      **:**  **Case no.**

**Vs.**

**CITY OF CINCINNATI, OHIO,**

801 Plum Street

Cincinnati, Ohio 45202

And,

**SHERYL LONG**

City Manager,

801 Plum Street

Cincinnati, Ohio 45202

**And**

**DIRECTOR ART DAHLBERG**

Buildings &Inspections Department

c/o Clerk of Council

801 Plum Street

Cincinnati, Ohio 45202

(Sued in his official and individual capacities)

And,

**Kevin Rhodes**

Buildings & Inspections Department c/o Clerk of Council

801 Plum Street

Cincinnati, Ohio 45202

(Sued in his official and individual capacities)

And,

1

**Bill Hern**,
Buildings & Inspections Department c/o Clerk of Council
801 Plum Street
Cincinnati, Ohio 45202
(Sued in his official and individual capacities)

And,

Ed Cunningham
Buildings & Inspections Department c/o Clerk of Council
801 Plum Street
Cincinnati, Ohio 45202
(Sued in his official and individual capacities)

And,

Mt. Auburn Community Development Corporation,
123 Dorsey Street
Cincinnati, Ohio 45202

And,

Carol Gibbs
President and CEO
Mt. Auburn Community Development Corporation,
123 Dorsey Street
Cincinnati, Ohio 45202
(Sued in her official and individual capacities)

And,

Christ Hospital Network
2139 Auburn Avenue
Cincinnati, Ohio 45219

And,

Deborah Hayes

2

CEO
Christ Hospital Network
2139 Auburn Avenue
Cincinnati, Ohio 45219
(Sued in her official and individual capacities)

And,

Victor Di Pilla
Vice President and Chief Development Officer
Christ Hospital Network
2139 Auburn Avenue
Cincinnati, Ohio 45219
(Sued in his official and individual capacities)

And,

Paul Grone
Vice President and Chief Information Officer
Christ Hospital Network
2139 Auburn Avenue
Cincinnati, Ohio 45219
(Sued in his official and individual capacities)

And,

Matt Shuler
Vice President and Chief Legal Officer
Christ Hospital Network
2139 Auburn Avenue
Cincinnati, Ohio 45219
(Sued in his official and individual capacities)

And,

Ted Scherpenberg
Vice President and Chief Financial Officer
Christ Hospital Network
2139 Auburn Avenue

Cincinnati, Ohio 45219
(Sued in his official and individual capacities)

And,

Andre Boyd, Sr.
Vice President and Chief Operating Officer
Christ Hospital Network
2139 Auburn Avenue
Cincinnati, Ohio 45219
(Sued in his official and individual capacities)

And,

Matt Strange
Vice President and Chief Risk Officer
Christ Hospital Network
2139 Auburn Avenue
Cincinnati, Ohio 45219
(Sued in his official and individual capacities)

And,

Heather Wilson
Vice President and Chief Revenue Officer
Christ Hospital Network
2139 Auburn Avenue
Cincinnati, Ohio 45219
(Sued in her official and individual capacities)

And,

Steve Rosfeld
President Christ Hospital Foundation
Christ Hospital Network
2139 Auburn Avenue
Cincinnati, Ohio 45219
(Sued in his official and individual capacities)

And,

God's Bible School and College
1810 Young Street
Cincinnati, Ohio 45202

And,

Rev. Rodney Loper,
President
God's Bible School and College
1810 Young Street
Cincinnati, Ohio 45202
(Sued in his official and individual capacities)

And,

David Boardman
Trustee
God's Bible School and College
1810 Young Street
Cincinnati, Ohio 45202
(Sued in his official and individual capacities)

And,

David Crosley
Trustee
God's Bible School and College
1810 Young Street
Cincinnati, Ohio 45202
(Sued in his official and individual capacities)

And,

Daniel Edwards
Trustee
God's Bible School and College
1810 Young Street

Cincinnati, Ohio 45202
(Sued in his official and individual capacities)

And,

Robert England
Trustee
God's Bible School and College
1810 Young Street
Cincinnati, Ohio 45202
(Sued in his official and individual capacities)

And,

Jack Hooker
Trustee
God's Bible School and College
1810 Young Street
Cincinnati, Ohio 45202
(Sued in his official and individual capacities)

John Manley
Trustee
God's Bible School and College
1810 Young Street
Cincinnati, Ohio 45202
(Sued in his official and individual capacities)

And,

Rob Ryan
Trustee
God's Bible School and College
1810 Young Street
Cincinnati, Ohio 45202
(Sued in his official and individual capacities)

And,

Leonard Sankey
Trustee
God's Bible School and College
1810 Young Street
Cincinnati, Ohio 45202
(Sued in his official and individual capacities)

And,

Nathan Smith
Trustee
God's Bible School and College
1810 Young Street
Cincinnati, Ohio 45202
(Sued in his official and individual capacities)

And,
Steve Snyder
Trustee
God's Bible School and College
1810 Young Street
Cincinnati, Ohio 45202
(Sued in his official and individual capacities)

And,

Monte Setler
Trustee
God's Bible School and College
1810 Young Street
Cincinnati, Ohio 45202
(Sued in his official and individual capacities)

And,

Keith Waggoner
Trustee
God's Bible School and College
1810 Young Street

Cincinnati, Ohio 45202
(Sued in his official and individual capacities)

And,

Jonathan Witter
Trustee
God's Bible School and College
1810 Young Street
Cincinnati, Ohio 45202
(Sued in his official and individual capacities)

And,

Viola Durr
Trustee
God's Bible School and College
1810 Young Street
Cincinnati, Ohio 45202
(Sued in her official and individual capacities)

And,

Brenda Herring
Trustee
God's Bible School and College
1810 Young Street
Cincinnati, Ohio 45202
(Sued in her official and individual capacities)

And,

Sonja Vernon
Chancellor
God's Bible School and College
1810 Young Street
Cincinnati, Ohio 45202
(Sued in her official and individual capacities)

And,

Grossman Design and Planning
308 East Eighth Street
Cincinnati, Ohio 45202

And,

Craig Grossman
Principal/Owner
Grossman Design and Planning
308 East Eighth Street
Cincinnati, Ohio 45202
(Sued in her official and individual capacities)

And,

Liz Via-Grossman
Principal/Owner
Grossman Design and Planning
308 East Eighth Street
Cincinnati, Ohio 45202
(Sued in her official and individual capacities)

And,

DiSalvo Development Advisors, LLC
5880 Sawmill Road, Ste. 220
Dublin, Ohio 43017

And,

Pete Di Salvo, President
DiSalvo Development Advisors, LLC
5880 Sawmill Road, Ste. 220
Dublin, Ohio 43017
(Sued in his official and individual capacities)

:

9

**Defendants,**                          :      **COMPLAINT AND JURY DEMAND**
                                         :

Now comes the Plaintiff April Norman and states as follows:

## Jurisdiction

This action is brought pursuant to 42 U. S. C. §§1983 and 1988, 18 U. S. C. §§ 1962,
1964  and 1965(a), 18 U. S. C. §§ 1962, 1964  and 1965(a), 28 U. S. C. §1331 and the
Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction is
founded on 28 U. S. C. §§1331 and 1341(3) and (4) and the aforementioned
constitutional and statutory provisions. Additionally, the Plaintiff invokes this Court's
supplemental jurisdiction, pursuant to 28 U. S. C.§1367(a), of state causes of action
included herein since they are involved in the facts, law and issues of this matter. Venue
is proper in this district.

## Parties

1.  Plaintiff  April Norman is an African-American woman and a citizen of the United
    States and at all times alleged herein was a resident of  Hamilton County, Ohio.

2.  Defendant City of Cincinnati, Ohio (Hereinafter "City"),is a municipal corporation
    within the State of Ohio,

3.  Defendant Kevin Rhodes is an inspector for the Department of Buildings and
    Inspections, City of Cincinnati,

4.  Bill Hern is an inspector for the Department of Buildings and Inspections, City of
    Cincinnati,

5.  Art Dahlberg is the Director of the Department of Buildings and Inspections, City of Cincinnati,

6.  Defendant Mt. Auburn Community Development Corp. (MACDC)is a corporation doing business in Cincinnati and is a collaborator in the Mt. Auburn Corridor Strategic Development Plan (Plan),

7.  Defendant Carol Gibbs is the President and CEO of MACDC,

8.  Defendant Christ Hospital Network is a corporation doing business in Cincinnati and is a collaborator in the Mt. Auburn Corridor Strategic Development Plan,

9.  Defendants Deborah Hayes, Victor Di Pilla, Paul Grone, Matt Shuler,Ted Scherpenberg, Andre Boyd, Sr., Matt Strange, Heather Wilson and Steve Rosfeld are officers of Defendant Christ Hospital Network,

10. Defendant God's Bible School and College is a corporation doing business in Cincinnati and is a collaborator in the Mt. Auburn Corridor Strategic Development Plan,

11. Defendants Rodney Loper, David Boardman, David Crosley, Viola Durr, Daniel Edwards, Robert England, Brenda Herring, Jack Hooker, John Manley, Rob Ryan, Leonard Sankey, Nathan Smith, Steve Snyder, Monte Stetler, Keith Waggoner, Jonathan Wittler are trustees of Defendant God's Bible School and College,

12. Defendant Sonja Vernon is the Chancellor of Defendant God's Bible School and College,

13. Defendant Grossman Group Design and Planning (Grossman Group)is a corporation doing business in Cincinnati and is a collaborator and led in development of the Mt. Auburn Corridor Strategic Development Plan,

14. Defendants Craig Grossman and Liz Via-Grossman are Principals/Owners of Defendant Grossman Group,

15. Defendant Disalvo Development Advisors, LLC (Disalvo LLC) is a corporation doing business in Cincinnati and is a collaborator in the Mt. Auburn Corridor Strategic Development Plan, doing the audit and market assessment for the Plan,

16. Defendant Pete Disalvo is the president of Disalvo LLC,

**Facts:**

17. Plaintiff is the owner of the real estate located at 104 Valencia Street, Cincinnati, Ohio since September 6, 2018, but did not obtain the deed until January 1, 2019,

18. Plaintiff On November 7, 2018, Plaintiff hired ProMaster repair to inspect the property but no repairs could be commenced until the Plaintiff had title to the property,

19. On February 27, 2019, Plaintiff replaced all windows on the property,

20. Beginning in March, 2019, Plaintiff began receiving numerous solicitations from developers to purchase her property, 3 to 5 solicitations per day,

21. On May 8, 2019, Plaintiff received the first of numerous notices of code violations from Defendant City, Department of Buildings and Inspections (hereinafter "Department"), citing repair of the chimney, soffit, gutters, and exterior paint, giving the Plaintiff only 30 days to complete these repairs,

22. No mention was made of any other violations,

23. Plaintiff made two attempts to contact Defendant Rhodes by telephone and email, May 24, 2019 and June 20, 2019

24. Defendant Rhodes did not answer or return these calls and emails,

25. On August 25, 2019, Plaintiff hired a contractor to repair the gutters and downspouts,,

26. Nonetheless Plaintiff received a bill for abatement fees due on September 28, 2019 in the amount of $36.40, which Plaintiff paid,

27. Repairs were completed except exterior painting, on October 21, 2019,

28. On December 3, 2019, Plaintiff received a notice of code violation,

29. On December 15, 2019, Plaintiff spoke to Defendant Rhodes and stated that she had completed the repairs except for the exterior paint which could not be completed before other repairs to the façade, steps fire escape were completed.

30. Rhodes referred to drone photos but mentioned no chimney issues and said he would go by the house and inspect it,

31. There was no follow-up from Defendant Rhodes,

32. In February, 2020, Plaintiff received a bill for abatement fees for $119.50,

33. On March 3, 2020, Plaintiff went to the office of the Department and spoke to Defendant Ed Cunningham, who wanted proof of her financing of the repairs,

34. Plaintiff was self-financing her repairs so Cunningham would not cancel the abatement fees,

35.  Plaintiff paid the abatement fee on March 5, 2020,

36. The State of Ohio was on lockdown for COVID 19 starting on March 23, 2020,

37. On May 22, 2020, in the midst of the lockdown, Plaintiff was ticketed for tall grass and weeds,

38. Solicitations from developers became more frequent and aggressive coinciding with the City's notices,

39. Plaintiff was fined $1250.00 on June 9, 2020 for the weeds and grass after Plaintiff disputed this ticket,

40. Plaintiff emailed City Manager Patrick Duhaney on June 29, 2020 to express her frustration and giving an account of the City's actions against her,

41. On August 6, 2020, Plaintiff received an Inspector Contact Notice from Defendant Rhodes,

42. Plaintiff called Rhodes on August 7, 2020 but had to leave a message to voicemail,

43. Rhodes did not respond,

44. On August 10, 2020, Plaintiff emailed Vice Mayor Christopher Smitherman who did not respond,

45. On August 11, 2020, Plaintiff received a notice from Defendant Dahlberg to register her property as a rental property,

46. On August 13, 2020, Plaintiff communicated to Defendant Dahlberg that her property was not a rental property,

47. Plaintiff received a message from Defendant Rhodes on August 13, 2020 requesting that Plaintiff call him,

48. Plaintiff called Rhodes on this same date but received no response,

49. Plaintiff emailed Defendant Rhodes and copied Vice Mayor Smitherman on August 14, 2020,

50. Plaintiff received yet another abatement invoice on August 22, 2020,

51. Plaintiff paid this invoice on August 26, 2020,

52. On August 26, Plaintiff spoke to a worker from the Department of Traffic and Engineering who she encountered making a survey of the area around 104 Valencia Street for the Christ Hospital Auburn Avenue expansion project,

53. Also on August 26, 2020, Plaintiff received a call from Czar Pro Win Real Estate and asked the caller why there was so much interest in the area around 104 Valencia Street and was told that the caller had been given a list of properties and was told to make offers for purchase,

54. Plaintiff received two more calls from developers on August 26, 2020,

55. On August 31, 2020, Plaintiff emailed councilwoman Jan-Michelle Lemon-Kearney and received an auto-reply to contact Policy Director Anthony P. Johnson,

56. Plaintiff emailed Anthony Johnson on September 1, 2020 and Johnson replied on the same date,

57. Plaintiff had a zoom call with Councilwoman Lemon-Kearney and Director Johnson on September 8, 2020,

58. Lemon-Kearney was unfamiliar with the processes of the Buildings and Inspections Department and how code violations ended up in court or in foreclosures,

59. Lemon-Kearney asked if there was a process to notify the Department that violations had been corrected, and Plaintiff informed her that there was no process other than emailing the inspector and there was no way of determining if the information had been recorded,

60. On September 14, 2020, Plaintiff received an email from Defendant Rhodes with an Abatement Fee Petition attached with no instructions,

61. This was the same form that Defendant Cunningham had sent in March, 2020 and was for investors or developers and could not be used by Plaintiff,

62. Plaintiff emailed Councilwoman Lemon-Kearney and Director Johnson explaining that the form was designed for business entities financing a project not an individual such as herself,

63. Defendant Dahlberg called Plaintiff on September 27, 2020 who told her to fill out the form to the best of her ability and provide supporting documentation of the improvements made to the property,

64. Plaintiff submitted this form as directed by Defendant Dahlberg to Defendant Rhodes on September 27, 2020 but received no response,

65. On October 19, 2020, Plaintiff emailed Councilwoman Lemon-Kearney informing her that she had submitted the Abatement Fee Petition,

66. Plaintiff received another abatement fee invoice for $114.40 on November 11, 2020,

67. Plaintiff emailed Councilwoman Lemon-Kearney about this abatement fee on November 23, 2020,

68. Defendant Dahlberg called the Plaintiff during the first week of December, 2020 and confirmed receipt of her Abatement Fee Petition and supporting documents,

69. Dahlberg told the Plaintiff not to pay the abatement fee or any subsequent fees that she received and an extension to paint the exterior of the property was given until the end of 2021,

70. The fire escape was repaired in 2021,

71. Dahlberg was to send an official letter confirming this conversation,

72. No letter was received by Plaintiff,

16

73. Plaintiff could not obtain a contractor to paint the exterior of the property in 2021 because contractors were backed-up due to the COVID shutdown in 2020, although she requested estimates and had many no-shows,

74. Grass at the property was continually cut,

75. In October through November, 2020, Duke Energy replaced its poles on Valencia and Rice Streets,

76. From January 1 through March, 2022, sewers and utility poles were replaced on Valencia Street and Vine and Loth Streets,

77. The area was inaccessible due to infrastructure projects,

78. Plaintiff received no further notices from the Department during the period until July 13, 2023,

79. From July 2 through July 12, 2023 Plaintiff received sixteen solicitations to sell the property,

80. On July 13, 2023, a Notice of Civil Offense and Civil Fine was taped to the door at 104 Valencia Street,

81. Plaintiff emailed Councilwoman Lemon-Kearney on July 14, 2023, but received no response,

82. On July 15, 2023 Plaintiff received a copy of the Notice of Civil Offense and Civil Fine in the mail,

83. Plaintiff emailed the Office of Administrative Hearings on July 17, 2023 and a telephone hearing was scheduled,

84. Plaintiff requested an in-person hearing and an in-person hearing date was set,

85. In preparation for this hearing, the Plaintiff discovered the Auburn Avenue Corridor Strategic Development Plan and Tax Increment Financing Plan which had been passed by the City in December, 2019,

86. On or about February 8, 2017, the Auburn Avenue Corridor Strategic Development Plan was presented with the participation of Defendants City, City Council, and City Planning Commission,

87. A map included in this document clearly includes the Over-The-Rhine and Mt. Auburn areas of the City of Cincinnati, predominantly African-American neighborhoods,

88. On page 31 of this document, there is what is labeled as a "Big Idea" to "Identify and solicit development interests for possible redevelopment opportunities", and, "Promote continued success of The Christ Hospital…" a private institution,

89. Page 32 of this document is labeled "Big Ideas" and is directed to private real estate developers and brokers and is intended to "Solicit appropriate tenant prospects…"

90. Under "Big Ideas, Next Steps" was included "Create a data source summary of all properties in the district (age, size, occupancy, ownership status, tenant, economics", p. 33,

91. The Department of Buildings and Inspections has had police powers since a collaborative agreement in 2003,

92. This Auburn Avenue Corridor Strategic Development Plan was developed from "A review of the City of Cincinnati Department of Building and Inspections records" targeting single-family homes that the City had ordered vacant due to code violations, page 28, which again targeted predominantly African-American neighborhoods,

93. The neighborhoods included in the map accompanying the Auburn Avenue Corridor Strategic Development Plan are located between and adjoin the locations of the soccer stadium and Christ Hospital (referenced and a key consideration in the Plan) and are predominantly African-American residents,

94. In or about November, 2017, Hamilton County and the City of Cincinnati provided $51,000,000.00 of taxpayer money to aid in the construction of a stadium,

95. On February 17, 2018, The City Planning Commission met and as part of its agenda, received a report and recommendation on the Auburn Avenue Corridor Strategic Development Plan (Plan),

96. Th process for developing the Plan was led by Grossman Group Planning and Design

97. The urban audit and market assessment for the Plan was completed by Disalvo Development Advisors,

98. Stakeholders in the Plan included Christ Hospital, God's Bible School and College and, Mt. Auburn Community Development Corporation,

99. Mt. Auburn Community Development Corporation selected Grossman Group for the development of the Plan,

100. On February 23, 2018, on the letterhead of the City of Cincinnati Council, a public hearing notice of the Economic Growth and Zoning Committee for the amending of the official zoning map in the West End area of the city from Manufacturing General, Residential Multi-family and Residential Mixed, to Urban Mix, which would permit the construction and use of entertainment facilities and bars and, large outdoor sites (with zoning commission approval),

101. The public hearing was scheduled for March 20, 2018,

102.    The Economic Growth and Zoning Committee prepared a document for this meeting under the logo of the City of Cincinnati,

103.    This document touted its consistency with Plan Cincinnati, providing page numbers from Plan Cincinnati as references, and stated that:

"Cincinnati will analyze and respond to neighborhood deterioration through targeted rehabilitation, modernization, or demolition" (pg. 160)

"Improve the quality and number of moderate to high-income rental and homeowner units' (pg. 165),

104.    No comparable plan utilizing "A review of the City of Cincinnati Department of Building and Inspections records" targeting single-family homes that the City had ordered vacant due to code violations, and utilizing wide-spread and aggressively targeted enforcement and zoning policing by the City were ever applied to non-African-American areas of the City.

105.    The re-zoning was codified into Ordinance 54-2018 on the following day, March 21, 2018,

106.    At Plaintiff's hearing on August 18, 2023, Plaintiff presented her supporting documentation of completing the required work on her violations and, contract for exterior painting,

107.    Defendant Hern was not prepared for this hearing,

108.    Plaintiff was given an extension to complete exterior painting,

109.    A hearing was scheduled for September 15, 2023,

110.    Defendant Hern did not appear at the September 15, 2023 hearing, which was re-scheduled for October 20, 2023,

111.  Exterior painting was completed on October 17, 2023,

112.  Plaintiff called and emailed Defendant Hern to schedule an inspection of the

property  but received no response,

113.  On October 17, 2023 OAH confirmed receipt of email,

114.  Plaintiff emailed pictures of the painted house,

115.  Plaintiff spoke with Defendant Hern on October 19, 2023 to state that he should

inspect the paint job on the house,

116.  Hern oddly stated that he had never been on the property and that permission was

needed to be on the property,

117.  Plaintiff inquired how coe violations could be generated if no one is permitted on

the property but received no answer,

118.  On October 19, 2023 Plaintiff called the Defendant City Manager's Office and

left a message ,

119.  There was no response from the City Manager,

120.  Defendant Hern failed to appear at the scheduled meeting with OAH on October

20, 2023,

121.  The hearing examiner dismissed fines against the Plaintiff  but only B & I could

close the case,

122.  Plaintiff  spoke with the office of the City Manager requesting a meeting with the

City Manager and was informed they would call her back,

123.  There was no response from Defendant City Manager, Sheryl Long,

124.  Plaintiff made two requests of OAH for inspector  photographs of the property but

received no response,

125.    On October 25, 2023, Plaintiff received a new notice of code inspection for the
fire escape dated October 20, 2023, the date Defendant Hern failed to appear for the
scheduled OAH hearing,

126.    On November 1, 2023, Plaintiff physically went to the office of Buildings and
inspections and finally received the inspector's photographs of the building,

127.    Among the photographs of the fire escape was a photograph taken inside the
house,

128.    No permission had been given to enter the house,

129.    After a meeting with B & I on November 6, 2023, Defendant Dahlberg stated he
would "look into" this matter,

130.    Dahlberg did not respond further,

131.    Plaintiff hired a City approved  engineer to examine the fire escape,

132.    Plaintiff forwarded this report and copied Defendant Hern on December 18, 2023,

133.    On January 19, 25 and 27, 2024 Plaintiff received three new notices of code
violations,

134.    On February 1, 2024 a contractor called to inform Plaintiff of a notice of violation
taped to the door at 104 Valencia Street,

135.    On February 9, 2024, Plaintiff emailed Hern and Dahlberg addressing latest code
violations,

136.    Plaintiff was informed by Defendant Hern that a new inspector, Chris Clark had
been assigned to the property,

137.    Plaintiff emailed photographs of completed chimneys to Chris Clark on February
12, 2024,,

138. There was no response from Chris Clark,

139. On February 14, 2024, Plaintiff addressed a meeting of the City Council concerning her interactions with Buildings and Inspections,

140. An assistant of Jan-Michelle Kearney called Plaintiff,

141. No corrective action has been taken to date,

### First. Cause of Action: Deprivation of Equal Protection

142. No person may be discriminated against on the basis race, color, national origin, religion, or sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity funded in whole or in part with Federal financial assistance. 42 U.S. C. §5302, 24 CFR Part 6, and such actions are violative of the Equal Protection Clause,

143. Defendant City of Cincinnati has received federal financial assistance under the American Rescue Plan Act. The American Rescue Plan Act provided $67.5 million in one-time emergency funding to the City. These resources will be used to reimburse COVID-19 related expenses *or as revenue replacement*, pending guidance from the U.S. Department of the Treasury (2022-2023 approved budget, City of Cincinnati) (Emphasis added) and, "Balancing the projected deficit of $73.4 million in the Approved FY 2021 General Fund Budget Update required $32.5 million of expenditure reductions many of which were one-time reductions. Vacant positions were eliminated, position vacancy savings was sharply increased*, leveraged support was shifted to Federal entitlement funds*, costs were shifted to various Restricted Funds where eligible, an Early Retirement Incentive Program (ERIP) was implemented, COLAs and merit pay were frozen for non-represented employees,

Police and Fire Recruit classes were delayed until FY 2022, and other miscellaneous reductions were taken in various line items" (2022-2023 approved budget, City of Cincinnati) (Emphasis added),

144.    Plaintiff is an African-American woman whose property has been the continuing target of harassment and cavalier code citations,

145.    Wherefore, the named Defendants City, Council and the named Defendants have violated the civil rights of the Plaintiff, who is a member of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution ,

146.    Because of the actions of the Defendants, Plaintiff has expended funds in the amount of $188,586.82, representing abatement fees, contractor fees, legal fees and costs, lost wages, expenditures of uncompensated time, mileage fees and replacement lock,

147.    The Plaintiff demands that the Court enjoin Defendants City, Council and the named Defendants who utilize federal funding, to close all open actions for code violations at 104 Valencia Street, from further harassment of the Plaintiff and from retaliation against her and her property at 104 Valencia Street, to inform all investors utilizing the Defendants' records that 104 Valencia Street is not available for development,  and/or order the named Defendants under this Cause of Action to pay actual damages in the amount of $188,586.82 and $1,000.000.00 in punitive damages,

**Second Cause of Action: Conspiracy to Violate Civil Rights;**

148.    Plaintiff repeats the allegations in paragraphs 1 through 147 of this Complaint as if fully re-written herein,

24

149.   Defendants City, Council and the named Defendants agreed overtly and by acquiescence to deprive the Plaintiff of her civil rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and have agreed overtly to conspire to take the private property, including the described real estate and have taken the overt actions to do so,

150.   Because of the actions of the Defendants, Plaintiff has expended funds in the amount of $188,586.82, representing abatement fees, contractor fees, legal fees and costs, lost wages, expenditures of uncompensated time, mileage fees and replacement lock,

151.   The Plaintiff demands that the Court enjoin Defendants City, Council and the named Defendants who utilize federal funding, to close all open actions for code violations at 104 Valencia Street, from further harassment of the Plaintiff and from retaliation against her and her property at 104 Valencia Street, to inform all investors utilizing the Defendants' records that 104 Valencia Street is not available for development,  and/or order the named Defendants under this Cause of Action to pay actual damages in the amount of $188,586.82 and $1,000.000.00 in punitive damages

**Third Cause of Action: Civil Conspiracy;**

152.   The Plaintiff  repeats the allegations contained in paragraphs 1 through 151  of this Complaint as if fully re-written herein,

153.   All of the Defendants, public and private, maliciously combined and agreed as enunciated above to deprive the Plaintiff of her real  property as described hereinbefore causing her to expend funds to respond to these actions by committing the overt acts of  trespass, concealment, and fraudulent code violation filings,

154.  Because of the actions of the Defendants, Plaintiff has expended funds in the amount of $188,586.82, representing abatement fees, contractor fees, legal fees and costs, lost wages, expenditures of uncompensated time, mileage fees and replacement lock,

155.  The Plaintiff demands that the Court enjoin Defendants City, Council and the named Defendants who utilize federal funding, to close all open actions for code violations at 104 Valencia Street, from further harassment of the Plaintiff and from retaliation against her and her property at 104 Valencia Street, to inform all investors utilizing the Defendants' records that 104 Valencia Street is not available for development,  and/or order the named Defendants under this Cause of Action to pay actual damages in the amount of $188,586.82 and $1,000.000.00 in punitive damages

**Fifth Cause of Action: Extortion**

156.  Plaintiff repeats paragraphs 1 through 155 as if fully re-written herein,

157.  Under Ohio Revised Code Section 2307.60, a civil action will lie for criminal acts even without a criminal conviction, *Buddenbberg v.Weisdack, 2022-Ohio-3832,*

158.  The Defendant City has used the threat of legal action and the filing of legal actions to force the sale of African-American owned properties to private real estate developers, and has through its agents encouraged these predatory sales to private real estate developers as per its written development plans,

159.   As a result of the Defendant City's and Council's  actions, and those of their agents named herein, Plaintiff  has expended funds to address the actions delineated herein,

160.     The Defendants referenced in this Cause of Action have repeatedly violated the provisions of ORC 2905.11,

161.     Because of the actions of the Defendants, Plaintiff has expended funds in the amount of $188,586.82, representing abatement fees, contractor fees, legal fees and costs, lost wages, expenditures of uncompensated time, mileage fees and replacement lock,

162.     The Plaintiff demands that the Court enjoin Defendants City, Council and the named Defendants who utilize federal funding, to close all open actions for code violations at 104 Valencia Street, from further harassment of the Plaintiff and from retaliation against her and her property at 104 Valencia Street, to inform all investors utilizing the Defendants' records that 104 Valencia Street is not available for development,  and/or order the named Defendants under this Cause of Action to pay actual damages in the amount of $188,586.82 and $1,000.000.00 in punitive damages

**JURY DEMAND**

Defendant demands a jury trial in this matter pursuant to O. R. C. 1923.10.


Certification and Closing Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have

evidentiary support after a reasonable opportunity for further investigation or discovery;

and (4) the complaint otherwise complies with the requirements of Rule 11

Respectfully Submitted,

/s/ George A. Katchmer
George A. Katchmer (0005031)

1886 Brock Road NE
Bloomingburg Ohio 43106
Phone: 740-437-6071
Fax; 740-437-6077
Attorney for Plaintiff