IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

April Norman,                                  :
                                               :        Case No. 1:24-cv-309
            Plaintiff,                         :
                                               :        Judge Susan J. Dlott
            v.                                 :
                                               :        **Order Granting Motions to Dismiss**
City of Cincinnati, *et al.*,                  :        **and Motion for Judgment on the**
                                               :        **Pleadings**
            Defendants.                        :

Plaintiff April Norman, a disgruntled property owner, filed this civil rights action against

forty-one Defendants. Norman alleges that the City engaged in a conspiracy to force her to sell

her home by citing her for Code violations. She alleges this conduct violated her equal

protection rights. Defendants now move for either dismissal or judgment on the pleadings

through six separate motions. (Docs. 21, 23, 24, 30, 31, 41.) For the reasons set forth more fully

below, the Court will **GRANT** all six motions and terminate this case from its docket.

I.      **BACKGROUND**

A. **Parties and Claims**

On June 7, 2024, Norman filed this action against the following Defendants:

- The City of Cincinnati, Ohio ("City"); Sheryl Long, City Manager; and
  Art Dahlberg, Kevin Rhodes, Bill Hern, and Ed Cunningham, who work
  in the Buildings and Inspections Department ("Building Department");[1]

- The Christ Hospital Health Network ("Christ Hospital") and the following
  officers of Christ Hospital: Deborah Hayes, Chief Executive Officer;
  Victor DiPilla, Vice President and Chief Development Officer; Paul
  Grone, Vice President and Chief Information Officer; Matt Shuler, Vice
  President and Chief Legal Officer; Ted Scherpbenberg, Vice President and
  Chief Financial Officer; Andre Boyd, Sr., Vice President and Chief
  Operating Officer; Matt Strange, Vice President and Chief Risk Officer;
  Heather Wilson, Vice President and Chief Revenue Officer; and Steven

---

[1] Collectively, Long, Dahlberg, Rhodes, Hern, and Cunningham are referred to as the "Individual City Defendants."

Rosfeld, President of Christ Hospital Foundation;[2]

- Mt. Auburn Community Development Corporation ("MACDC") and Carol Gibbs, President and CEO of MACDC;

- Gossman Design and Planning ("Gossman Design"); and its two Principal/Owners, Craig Gossman and Liz Via-Gossman;[3]

- God's Bible School and College, Inc. ("GBSC"); Rev. Rodney Loper, President of GBSC; David Boardman, David Crosley, Daniel Edwards, Robert England, Jack Hooker, John Manley, Rob Ryan, Leonard Sankey, Nathan Smith, Steve Snyder, Monte Setler, Keith Waggoner, Jonathan Witter, Viola Durr, and Brenda Herring, Trustees of GBSC; and Sonja Vernon, Chancellor of GBSC;[4] and

- DiSalvo Development Advisors, LLC ("DiSalvo Development") and its President, Pete DiSalvo.

(Doc. 1 at PageID 1–10.)

**B. Factual Allegations in the Complaint**[5]

April Norman is an African American woman who purchased property located 104 Valencia Street in Cincinnati, Ohio (the "Property") on September 6, 2018.  (Doc. 1 at PageID 10, 12.)  The Property has a history of City Building Code ("Code") violations that predated her ownership.  (Doc. 24-1.)  On September 14, 2016, the Property's prior owner received a Notice of Code Violation citing retaining wall guardrail, chimney repair, gutter and downspouts repair, soffit repair, and exterior painting, which were still issues when Norman took ownership.  (Doc. 24-1; Doc. 1 at PageID 12–13.)

---

[2] Collectively, Hayes, DiPilla, Grone, Shuler, Scherpbenberg, Boyd, Strange, Wilson, and Rosfeld are referred to as the "Individual Christ Hospital Defendants."

[3] Plaintiff named "Grossman Design and Planning," "Craig Grossman," and "Liz Via-Grossman" as Defendants. These Defendants assert that they were improperly named, as Gossman is spelled without the "r."  (Doc. 20.) Collectively, Gossman and Via-Gossman are referred to as the "Individual Gossman Defendants."

[4] Collectively, Loper, Boardman, Crosley, Edwards, England, Hooker, Manley, Ryan, Sankey, Smith, Snyder, Setler, Waggoner, Witter, Durr, Herring, and Vernon are referred to as the "Individual GBSC Defendants."

[5] The Court accepts the allegations as true for purposes of ruling on the pending motions.

Code violations were pending on the Property at the time of Norman's purchase. (Doc. 24-1.) Norman obtained the deed to the Property on January 1, 2019. (Doc. 1 at PageID 12.) Beginning in March 2019, Norman began receiving "numerous solicitations from developers seeking to purchase her property, 3 to 5 solicitations per day." (*Id*.) On May 8, 2019, Norman received a Notice of Code Violation from the City, listing issues previously cited: repair of the chimney, soffits, gutters, and exterior paint and giving Norman thirty days to complete those repairs. (*Id*.; Doc. 24-3 at PageID 445–450.) Norman attempted to contact Defendant Rhodes of the Building Department by phone and email in May and June 2019 but was unsuccessful in obtaining a response. (Doc. 1 at PageID 12; Doc. 24-3 at PageID 451.)

Norman completed all cited repairs except exterior painting by October 2019. (Doc. 1 at PageID 13.) On September 18, 2019, Norman paid a $36.40 abatement fee. (*Id*.; Doc. 24-3 at PageID 452–453.) On December 3, 2019, Norman received another Notice of Code Violation.[6] (Doc. 1 at PageID 13.) Norman contacted Defendant Rhodes to tell him that her repairs were complete except for exterior painting, and he stated he would go by the house and inspect it. (*Id*.)

Norman received a bill for abatement fees in February 2020 for $119.50, which she paid in March 2020. (Doc. 1 at PageID 13.) She spoke to Defendant Cunningham of the Building Department in March 2020 asking the abatement fee to be canceled, but he did not agree to do so. (*Id*.)

On May 22, 2020, Norman was ticketed for tall grass and weeds at her Property. (*Id.*) On June 9, 2020, Norman was fined $1,250.00 for the grass and weeds after she disputed the ticket. (*Id.* at PageID 14.) Norman emailed City Manager Patrick Duhaney on June 29, 2020 to

---

[6] The December 3, 2019 Notice was a "Final Notice" concerning the pending violations on the Property. (Doc. 24-3 at PageID 454.)

complain about the assessments and to express her suspicion over receiving offers to purchase her property from DM-Investments LLC "within 24 hours of receiving each invoice." (*Id*. at PageID 14; Doc. 24-4 at PageID 509–510.) In her email, Norman described purchasing her property from a Sheriff's auction. (Doc. 24-4 at PageID 509.) She describes that after receiving her deed, she received a letter from the Building Department stating that her property was "in violation of 4 codes" and she had thirty days to comply. (*Id.* at PageID 509.) She also complained about being harassed with solicitations from third parties to purchase her property and stated she did not "understand how my property has generated such interest with the City of Cincinnati." (*Id*.)

Norman asserts that solicitations from developers became "more frequent and aggressive coinciding with the City's notices." (Doc. 1 at PageID 13.) Plaintiff asserts that she attempted to reach Defendants Dahlberg and Rhodes from the Building Department, along with Vice Mayor Chris Smitherman, in August 2020. (Doc. 1 at PageID 14.) On August 22, 2020, Norman received another abatement invoice, which she paid on August 26, 2020. (*Id*. at PageID 14–15.) On August 26, 2020, Norman spoke to a worker from the City's Department of Traffic and Engineering who was surveying the area around her home for a Christ Hospital Auburn Avenue expansion project. (*Id*. at PageID 15.) Also on this date, Norman received a call from "Czar Pro Win Real Estate" and asked the caller why there was so much interest in the area around her home and was told the caller had "been given a list of properties and was told to make offers for purchase." (*Id*.) She received more calls after that. (*Id*.)

In August, September, and October of 2020, Norman communicated with City Councilwoman Jan-Michelle Lemon-Kearney, Policy Director Anthony P. Johnson, and Defendant Dahlberg about an abatement fee petition. (*Id*. at 15–16.) On November 11, 2020,

Plaintiff received an abatement fee invoice for $114.40.  (*Id*.)  She filed a request to have the abatement fee suspended, which was granted on December 4, 2020, and Norman was given until December 7, 2021 to compete exterior painting.  (*Id*. at PageID 16; Doc. 24-3.)  But, during the COVID-19 pandemic, Plaintiff was unable to find a painter, so she did not complete the exterior painting on the Property.  (Doc. 1 at PageID 17.)

From July 2 through July 12, 2023,[7] Norman "received sixteen solicitations to sell the property."  (*Id*.)  On July 13, 2023, Norman received a Notice of Civil Offense and Civil Fine for failing to address the outstanding Code violations originally issued on May 8, 2019.  (*Id*.; Doc. 24-3 at PageID 500.)  Norman requested and obtained a hearing on the Notice of Violation. (Doc. 1 at PageID 17, 20.)

While she was preparing for her hearing, Norman learned about the Auburn Avenue Corridor Strategic Development Plan ("Plan"), which she asserts was passed by the City in December 2019.  (*Id*. at PageID 18; *but see* Doc. 24-2.)  However, according to public records, under City of Cincinnati Resolution 36-2017, the Plan was dated February 7, 2017 and approved by the City Planning Commission on February 17, 2017.[8]  (Doc. 24-2 at PageID 376–442.) Norman asserts that the rezoning was codified into City Ordinance 54-2018 by the City on March 21, 2018.  (*Id*. at PageID 20; Doc. 24-2 at PageID 443.)

Norman asserts that the Plan was developed from a review of Building Department records and targeted single-family homes the City had ordered vacant due to Code violations, which targeted predominantly African American neighborhoods.  (*Id*. at PageID 18–19.) Norman asserts that the process for developing the Plan was led by Gossman Design, the urban

---

[7] Norman does not allege any facts from December 4, 2020 to July 2, 2023.

[8] Norman asserts that on or about February 8, 2017, the Plan was presented with participation of the City.  (Doc. 1 at PageID 18.)  Based on City records, however, the Plan was *passed* in February 2017.  (*See* Doc. 24-2.)

audit and market assessment for the Plan was conducted by DiSalvo Development, and "[s]takeholders" in the Plan included Christ Hospital, GBSC, and MACDC.  (*Id*. at PageID 19.)

The hearing on Norman's Code violation was scheduled for August 18, 2023, but the date was continued multiple times.  (Doc. 24-3 at PageID 506–507.)  Norman completed exterior painting at her Property on October 17, 2023.  (*Id*. at PageID 21.)  On October 20, 2023, the examiner held the hearing and dismissed the Notice of Civil Offense & Civil Fine (Case Number B201903962) with no civil fine or hearing fee, but the underlying orders were kept in place. (Doc. 24-3 at PageID 506–507.)

Also on October 20, 2023, Norman received a Notice of Code Violation for her fire escape.  (Doc. 24-6; Doc. 1 at PageID 22.)  Norman asserts that the inspector's photographs included images taken from inside her house and she did not give permission for entry to her home.  (Doc. 1 at PageID 22.)  Norman hired a City-approved engineer to examine the fire escape and forwarded the report and copied Defendant Hern of the Building Department on December 18, 2023.  (*Id*.)

In January 2024, Norman received two more Notices of Code Violation relating to her chimney, keeping the building vacant, and her fire escape.  (*Id*. at PageID 22; Doc. 24-7; Doc. 24-8.)  On February 1, 2024, a contractor called to inform Norman of a Notice of Violation at her Property.  (*Id*.)  Norman sent photographs of chimney repairs to a City inspector but did not receive a response.  (*Id*.)  She also raised concerns about her interactions with Building Department with City Council at a meeting on February 14, 2024.  (*Id*. at PageID 23.)  This lawsuit followed.

### C.  Plaintiff's Claims and Pending Motions

Norman filed this action on June 7, 2024 and asserts the following four claims: (1)

deprivation of equal protection against all Defendants; (2) conspiracy to violate civil rights against all Defendants; (3) civil conspiracy against all Defendants; and (4) extortion against the City in violation of Ohio Revised Code 2905.11.[9] (*Id*. at PageID 26–27.) She seeks damages totaling $188,586.82 and punitive damages of $1,000,000. (*Id.*) Norman also seeks an injunction to close Code violation actions at her Property, prevent harassment and retaliation, and to inform all investors utilizing Defendants' records that her Property is not available for development. (*Id*.)

The City and the Individual City Defendants, Christ Hospital and the Individual Christ Defendants, MACDC and Gibbs, and Gossman Design and the Individual Gossman Defendants move for dismissal under Rule 12(b)(6). (Docs. 21, 23, 24 30.) GBSC and the Individual GBSC Defendants move for dismissal under Rule 12(b)(5) and 12(b)(6). (Doc. 31.) DiSalvo Development and Pete DiSalvo move for judgment on the pleadings under Rule 12(c). (Doc. 41.) The Court will address each Motion in turn.

## III. STANDARD OF LAW

### A. Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6) and Motion for Judgment on the Pleadings Under Rule 12(c)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, a complaint must comply with Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Rule 8(a)(2)). When ruling

---

[9] Norman's Complaint is not clearly drafted. Count 4 was incorrectly labeled as Count 5. As there are only four claims alleged in the Complaint, the Court will refer to this as Count 4. (*See id*. at PageID 26.) In moving to dismiss or for judgment on the pleadings, Defendants have interpreted the claims as brought pursuant to different laws.

on a motion to dismiss, the court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referenced in the Complaint and central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008); *see also* Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.").[10]

A complaint must include sufficient facts to state a claim that is plausible on its face and "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. A complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014) (citation omitted). However, it "does not need detailed factual allegations" or "heightened fact pleading of specifics." *Twombly*, 550 U.S. at 555, 570. A district court examining the sufficiency of a complaint must accept well-pleaded facts as true, but not legal conclusions or legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678–679; *DiGeronimo Aggregates*, 763 F.3d at 509.

---

[10] In this case, the Court considers some public documents referenced in the Complaint to which the City has attached to its Motion to Dismiss. (*See* Docs. 24-1 to 24-11.) The Court directly cites any such document it considers. Plaintiff objects to consideration of public documents on the basis that a district court may take judicial notice of the existence, not the substance, of a document. *See, e.g., Platt v. Bd. of Comm'rs on Grievs. & Discipline of the Ohio Supreme Court*, 894 F.3d 235, 245 (6th Cir. 2018) (affirming district court's denial of motion to take judicial notice of news reports). But this argument is misguided as the documents the City attaches to its Motion to Dismiss are public documents that Norman references in her Complaint and are central to her claims. The Sixth Circuit permits consideration of such documents in ruling on a motion to dismiss without converting it into one for summary judgment. *See Bassett*, 528 F.3d at 430 (6th Cir. 2008); *see also Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883–884 (6th Cir. 2023) (same).

The standard that applies to motions to dismiss brought pursuant to Rule 12(b)(6) extends to motions for judgment on the pleadings brought pursuant to Rule 12(c). *Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). "A Rule 12(c) motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal quotations and citation removed).

### B.  Motion to Dismiss for Improper Service Under Rule 12(b)(5)

A trial court may dismiss a complaint for insufficient service of process pursuant to Rule 12(b)(5). "[W]ithout proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant." *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012) (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) and *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987)).  Without personal jurisdiction, "a federal court is powerless to proceed to an adjudication." *Boulger v. Woods*, 917 F.3d 471, 476 (6th Cir. 2019) (quoting *King*, 694 F.3d at 655) (internal quotation marks omitted).

## IV.  PENDING MOTIONS

### A.  City and Individual City Defendants' Motion to Dismiss (Doc. 24)

The City and Individual City Defendants move to dismiss all four claims against them. (Doc. 24.)  As to the first cause of action, deprivation of equal protection, the City and Individual City Defendants assert that there is no private cause of action.  They assert the second and third causes of action for conspiracy to violate civil rights and conspiracy are time-barred.  Alternatively, they assert that Norman's second and third claims are vague and conclusory and

insufficient to state a claim.[11]  As to Norman's fourth claim, state law extortion, the City asserts

that the Court should decline to exercise jurisdiction over this claim if the federal claims are

dismissed.[12]  The Court will address each claim in turn.

### 1.  First Claim: No Private Cause of Action Under 42 U.S.C. § 5309(a)

The parties dispute under what statute Norman brings her first claim.  In her first cause of

action, Norman asserts that no person may be discriminated against based on race, color, national

origin, religion, or sex, or be excluded from participation in, or denied the benefits of, or

subjected to discrimination under any program or activity funded in whole or in part with federal

financial assistance under 42 U.S.C. § 5302, 24 C.F.R. Part 6.  She asserts that "such actions are

violative of the Equal Protection Clause."  (Doc. 1 at PageID 23.)  Norman alleges the City

received federal financial assistance under the American Rescue Plan Act for COVID-19 related

expenses or as revenue replacement.  (*Id*.)  Norman alleges she was the "continuing target of

harassment and cavalier code violations" and is a member of a protected class under the Equal

Protection Clause of the Fourteenth Amendment as an African American woman.  (*Id*.)  She

alleges that the City, "Council," and "named Defendants" violated her civil rights.  (*Id*. at

PageID 24.)

The City interprets Norman's claim as arising under 42 U.S.C. § 5309, which does not

provide a private cause of action.  Section 5309(a) prohibits discrimination under any program

funded through Chapter 69 of the Housing and Community Development Act:

> No person in the United States shall on the ground of race, color, national origin,
> religion, or sex be excluded from participation in, be denied the benefits of, or be
> subjected to discrimination under any program or activity funded in whole or in

---

[11] The City and Individual City Defendants also argue Norman failed to take steps to contest or appeal her Code violations issued in 2023 and 2024, and failure to do so constitutes waiver and failure to exhaust her administrative remedies.  (Doc. 24 at PageID  353.)  For the sake of judicial economy, the Court need not address this argument.

[12] The City alternatively argues that the state law claim is time-barred and Norman's allegations are insufficient to state a claim for relief, arguments the Court need not address as it will decline jurisdiction.

> part with funds made available under this chapter.  Any prohibition against
> discrimination on the basis of age under the Age Discrimination Act of 1975 or
> with respect to an otherwise qualified handicapped individual as provided in
> section 794 of Title 29 shall also apply to any such program or activity.

42 U.S.C. § 5309(a).  Section 5309(c) authorizes civil action by the Attorney General, but it does

not provide a private right of action.  *Freeman v. Fahey,* 374 F.3d 663, 665–666 (8th Cir. 2004).

Plaintiff's Complaint asserts that the City receives financial assistance and is not permitted to

discriminate under § 5309, and doing so violated the Equal Protection Clause.  As § 5309

provides no cause of action, this is grounds to dismiss her claim.

Alternatively, the Court will consider the claim pursuant to 42 U.S.C. § 1983.  Plaintiff

responds that her first claim is actually brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. §

1988.  Section 1988 does not provide a private cause of action, either.  *Moor v. County of*

*Alameda*, 411 U.S. 693,702–703 n.17 (1973) ("[T]he lower federal courts have repeatedly

rejected the argument § 1988 independently creates a federal cause of action for the violation of

federal civil rights.").  In order to state a cause of action under § 1983, a plaintiff must plead two

elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2)

caused by a person acting under color of state law."  *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of*

*Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460,

463 (6th Cir. 2006)).  Plaintiff relies upon the fact that she cited several statutes in a

"Jurisdiction" section of the Complaint, one of which included 42 U.S.C. § 1983.  (*See* Doc. 1 at

PageID 10.)  She also asserts that her allegation that her equal protection rights were violated

makes clear her claim is brought pursuant to 42 U.S.C. § 1983.  If the Court construes this claim

as brought under 42 U.S.C. § 1983, this claim still fails for the reasons discussed in the following

Subsection (A)(2).

### 2. First and Second Claims: § 1983 Claims Barred by the Statute of Limitations and Lack Specificity

In Claim 2, Norman asserts that all the Defendants conspired to violate her civil rights. (Doc. 1 at PageID 25.)  In support, she "repeats the allegations in paragraphs 1 through 147 of this Complaint."  (*Id*. at PageID 24.)[13]  Construing Plaintiff's allegations as being brought under 42 U.S.C. § 1983, the claim is time-barred.  As noted above, alternatively, Claim 1 is time-barred, too.

Once again, a plaintiff suing under § 1983 must establish that she was denied a constitutional right and that the deprivation was caused by a defendant acting under color of state law.  *Hunt*, 542 F.3d at 534.  A civil conspiracy under 42 U.S.C. § 1983 is an agreement between two or more persons to injure another by unlawful action.  *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  To prevail on a civil conspiracy claim, Plaintiff must show that (1) a "single plan" existed, (2) Defendants "shared in the general conspiratorial objective" to deprive her of her constitutional (or federal statutory) rights, and (3) "an overt act was committed in furtherance of the conspiracy that caused injury" to her.  *Id*. (citing *Hooks v. Hooks,* 771 F.2d 935, 944 (6th Cir. 1985)).  "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy [and] [e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved."  *Id*. (citing *Hooks*).

The City and the Individual City Defendants move to dismiss Norman's 42 U.S.C. § 1983 claim on the basis of a two-year statute of limitations.  Because § 1983 does not include a statute of limitations, federal courts apply the limitations period for personal injury torts from the state where the events occurred, which in this case is the two-year limitations period applied in Ohio.  *See Wallace v. Kato*, 549 U.S. 384, 387–388 (2007); Ohio Rev. Code § 2305.10 (two-year

---

[13] Norman does not cite 42 U.S.C. § 1983 or any other statute in this section to identify the basis of Claim 2.

statute of limitations for Ohio personal-injury claims); *Beaver St. Inv., LLC v. Summit Cnty.*, 65 F.4th 822, 826 (6th Cir. 2023) (applying Ohio's two-year statute of limitations to a § 1983 claim). "Although the statute of limitations is determined by state law, 'the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.'" *Beaver*, 65 F.4th at 826 (quoting *Wallace*, 549 U.S. at 388).

"The 'standard rule' is that the statute of limitations for § 1983 claims begins to run when a 'plaintiff has a complete and present cause of action.'" *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp of Cal.*, 522 U.S. 192, 201 (1997)). "A complete cause of action arises 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Id.* (citing *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)). "To determine when a statute of limitations begins to toll in a § 1983 action, therefore, this Court looks 'to what event should have alerted the typical lay person to protect his or her rights.'" *Id.* (quoting *Kuhnle*, 103 F.3d at 520) (quotation and citation omitted). "Put differently, this 'injury-occurrence' or 'occurrence' rule triggers the limitations period on the first day that every element of a claim has occurred such that the plaintiff may sue in court over the claim." *Reguli v. Russ*, 109 F. 4th 874, 879 (6th Cir. 2024). However, as discussed by *Reguli*, some § 1983 cases have taken a different approach by suggesting that the statute includes a "discovery rule," meaning the limitations period runs from the date the plaintiff discovered, or reasonably should have discovered, basic facts about her claim. *Id.* (citing *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015); *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991); *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)).

Under either occurrence or discovery rule, Norman's § 1983 claims are time-barred. Norman filed this lawsuit on June 7, 2024. (Doc. 1.)  But the alleged discriminatory Plan was

passed in 2017,[14] or 2019 based upon Norman's allegations,[15] and she claims third-party solicitations were aggressively sent to her beginning in 2019.  (*Id*. at PageID 18–20; Doc. 24-2.) Norman brought this lawsuit in June 2024, more than two years after the City codified what she alleges was a discriminatory Plan that caused her to be subjected to unfair Code violations and solicitations by third parties.  She alleges that the other Defendants collaborated or were stakeholders in this Plan, which was public knowledge in 2017 (or 2019, if accepting Norman's date).  When she purchased her Property, there were existing Code violations pending at that time.  In sum, at the very latest, Norman had constructive knowledge of her claims when the alleged discriminatory Plan was passed, which was in 2019 based on her allegation or 2017 based upon public records supplied by the City.  But Norman brought suit in June 2024, which was significantly more than two years after either date.

Norman alleges her claim is not time-barred because she did not discover the Plan until 2023 when she was preparing for her hearing on Code violations on her Property.  Norman also argues she should benefit from the continuous violation doctrine.  Neither of Norman's arguments is compelling.  She had actual or constructive knowledge of the alleged discriminatory Plan by 2019 at the latest because it was public knowledge.  *See Abbott v. E.I. Du Pont De Nemours & Co*., 54 F.4th 912, 946–947 (6th Cir. 2022).

Norman has not demonstrated that this is the rare § 1983 case to which the continuous violation doctrine should apply to toll the statute of limitations.  A continuous violation exists when (1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiff accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct,

---

[14] Under City of Cincinnati Resolution 36-2017, dated May 3, 2017, the Plan was dated February 7, 2017 and approved by the City Planning Commission on February 17, 2017.  (Doc. 24-2 at PageID 376–442.)

[15] Plaintiff claims the Plan was passed in 2019. (*Id*. at PageID 18; *but see* Doc. 24-2.)

further injury would have been avoided. *Hensely v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009) (citing *Kuhnle,* 103 F.3d at 521). The continuous violation doctrine is "rarely" extended to § 1983 actions. *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003).

Norman has not demonstrated facts supporting "continuing wrongful conduct" by any Defendant. Plaintiff cites Code violations on her Property, some of which were in place before she purchased it and prior to the Plan being passed, but there are no allegations these were sham or fraudulent Code violations. She bought the Property from a Sherriff's sale with existing Code violations pending, and thus had at least constructive knowledge of the pending Code violations at the time of purchase.[16] Code violations on her Property existed prior to the passage of the alleged discriminatory Plan. Plaintiff also does not challenge the legitimacy of the underlying violations and repairs needed.

Furthermore, for the continuous violation doctrine to apply in a § 1983 discrimination case, Plaintiff must demonstrate "something more than the existence of discriminatory treatment in [her] case." *Katz v. Vill. of Beverly Hills*, 677 F. App'x 232, 236 (quoting *Haithcock v. Frank*, 958 F.2d 671, 679 (6th Cir. 1992)). Norman does not demonstrate the "something more" to

---

[16] Knowledge of those prior outstanding Code violations is imputed to Norman as a purchaser of the Property. Pursuant to Ohio Rev. Code § 5301.253:

> (A) The owner of any property who has received written notice that the property is in violation of any building or housing code shall give the purchaser or grantee of the property written notice of the code violations prior to entering into an agreement for the transfer of title to the property, or if the owner does not enter into a written agreement for the transfer, prior to the filing for record of a deed to the property. Any notice or order of a court or of a housing or building authority of the state or a political subdivision that relates to a violation of the building or housing code of the state or any political subdivision and that appears on the public records of the issuing authority is notice to all subsequent purchasers, transferees, or any other persons who acquire any interest in the real property in which the violation exists and may be enforced against their interest in the real property without further notice or order to them.
> (B) The transfer of title to, or any interest in, real property in which a housing or building code violation exists shall not be grounds for dismissal of charges in any court against a previous owner of the real property for failure to comply with a notice for correction of a housing or building code violation.

Ohio Rev. Code Ann. § 5301.253.

show that the allege discriminatory treatment extended beyond herself and to a class of plaintiffs to which she is a member. For these reasons, this is not a rare case in which this exception to the two-year statute of limitations applies. Norman's § 1983 claims are time-barred.

Alternatively, the City and Individual City Defendants argue that Plaintiff's conspiracy claim is too vague to meet the pleading standard. Norman alleges Defendants conspired to violate her rights, but she does not support that allegation with any specific facts, which is fatal to a conspiracy claim. "Conspiracy must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). Although she complains about receiving solicitations, she has not identified how the City conspired with third parties, nor does she allege that the Code violations were sham citations. She also does not identify any similarly-situated person who was treated differently based on race.[17] Norman has not alleged any facts suggesting race-based acts. For these reasons, too, her federal civil conspiracy claim fails.

### 3. Third Claim: Insufficient to State a Claim for Relief

In her third claim, Norman asserts that "[a]ll of the Defendants, public and private, maliciously combined and agreed as enunciated above to deprive the Plaintiff of her real property as described hereinbefore causing her to expend funds to respond to these actions by committing the overt acts of trespass, concealment, and fraudulent code violation filings." (Doc. 1 at PageID 25–26.) Plaintiff does not cite under what law she brings her civil conspiracy claim. The City interprets this as a 42 U.S.C. § 1985(3) claim because Plaintiff cites 42 U.S.C. § 1985

---

[17] The City and Individual City Defendants raise other merit arguments that the Court need not address for the sake of judicial economy. Specifically, they argue there was no plan to deprive Norman of her rights and she fails to show actual injury.

in her "Jurisdiction" section of the Complaint.[18] (Doc. 1 at PageID 10.) "Section 1985 of Title 42 provides a cause of action for conspiracy to deprive individuals of equal protection of the law." *Carter v. Nat'l City Bank,* No. 1:17-cv-508, 2018 WL 3543699, at *7 (S.D. Ohio July 23, 2018), *report and recommendation adopted*, 2018 WL 6681226 (S.D. Ohio Dec. 19, 2018); s*ee* 42 U.S.C. § 1985(3). Under either Ohio or federal law, the claim fails.

To state a claim for civil conspiracy under 42 U.S.C. § 1985(3), a plaintiff must prove "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Vakilian v. Shaw,* 335 F.3d 509, 518 (6th Cir. 2003) (citing *United Bhd. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 828–829 (1983)). "To state a claim under § 1985(3), a complaint must allege both a conspiracy and 'some class-based discriminatory animus behind the conspirators' action.'" *Newell v. Brown,* 981 F.2d 880, 886 (6th Cir. 1992) (quoting *Dunn v. Tenn.*, 697 F.2d 121, 124 (6th Cir. 1982)).

The district court evaluated a similar complaint to Norman's in *Williams v. Ohio Department of Rehabilitation and Corrections*. No. 2:20-cv-6462, 2021 WL 6124556, at *4 (S.D. Ohio Dec. 28, 2021). There, the plaintiff, an inmate at the Ohio Reformatory for Women ("ORW"), made a "vast array of allegations" against sixteen defendants relating to the contention that the water at the ORW was contaminated and caused her harm. *Id*. at *1. Included in her complaint was a § 1985(3) claim alleging that Marysville, the Ohio Department of Rehabilitation and Correction, the ORW, Scotts Miracle-Gro Company (headquartered in Marysville, Ohio),

---

[18] Responding in opposition, Norman cites both Ohio law and 42 U.S.C. § 1983(5) and argues the claim is raised under both state and federal law. (Doc. 32 at PageID 701–702.) Plaintiff's Complaint is not a model of clarity.

and the United States Environmental Protection Agency engaged in a conspiracy to violate her constitutional rights as a low income, African American woman. *Id*. at *1, *4.  The Court found that the plaintiff's recitation of the elements of a § 1985(3) claim, and then only adding that the defendants were engaged in a conspiracy to deprive her, an African American, of equal protection when Scotts Miracle-Gro Company polluted water, was insufficient to meet the pleading standard and required dismissal. *Id*. at *4.  This is so because a plaintiff must allege the defendants conspired together and for the purpose of depriving the plaintiff of equal protection of the laws and that they committed an act in furtherance of the conspiracy which was motivated by racial or other class-based discriminatory animus. *Id*. (relying upon *Déjà Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty., Tenn. By & Through Traffic & Parking Comm'n*, 805 F. App'x 379, 382 (6th Cir. 2020)).

As in *Williams*, Norman's complaint fails to allege "class-based discriminatory animus." *Id*. (citing *Déjà Vu*, 805 F. App'x 379 at 384).  Norman does not allege how Defendants conspired together to violate her rights, or how they were motivated on the basis of her race.  She has also not identified any other similarly-situated individuals who were treated differently based upon race.  The Complaint alleges that Norman was cited for Code violations by the City.  Norman does not allege that they were sham violations based upon her race.  Her Complaint fails to state a cause of action based upon conspiracy under § 1985(3).[19]

If this claim arises under Ohio law, it still fails.  Civil conspiracy under Ohio law requires "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Williams v. Aetna Fin. Co*., 700 N.E.2d 859, 868 (Ohio 1998) (citing *Kenty v. Transamerica Premium Ins. Co*., 72 Ohio St. 3d

---

[19] The City and Individual City Defendants also argue the claim is barred by the statute of limitations.  The Court need not delve into this analysis as the allegations fail to state a claim for relief.

415, 419, 650 N.E.2d 863, 866 (1995)). "An underlying unlawful act is required before a civil conspiracy claim can succeed." *Id*. (citing *Godsen v. Louis*, 116 Ohio St. App. 195, 219, 687 N.E.2d 481, 496 (1996)). "[V]ague and conclusory allegations unsupported by material facts in support of any conspiracy claim" are insufficient to state a claim. *Thomas v. City of Circleville*, No. 2:23-cv-1474, 2023 WL 3742988, at *4 (S.D. Ohio May 31, 2023) (citing *Farmer v. Reece*, No. 3:19-cv-1189, 2020 WL 32512, at *2 (N.D. Ohio Jan. 2, 2020)), *report and recommendation adopted*, 2023 WL 4366544 (S.D. Ohio July 6, 2023). Norman's allegations against the City and Individual City Defendants are vague and conclusory. There is no factual support of a "malicious combination" of two or more persons. Thus, under Ohio law, this claim fails, too.

### 4. Fourth Claim: No Supplemental Jurisdiction

In her fourth cause of action, Plaintiff alleges the City engaged in extortion under Ohio law. She asserts that "Defendants referenced in this Cause of Action[20] have repeatedly violated the provisions of ORC 2905.11." (Doc. 1 at PageID 26–27.) Because Norman's federal claims fail, the Court will not exercise supplemental jurisdiction over her state law claim. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.")[21] Thus, this claim is dismissed.

For these reasons, the City and Individual City Defendants' Motion to Dismiss (Doc. 24) is **GRANTED**.

---

[20] Count 4 is brought against the City only.

[21] The City also argues the claim on the merits. The Court will not delve into those arguments as it is declining to exercise jurisdiction over the remaining state law claim.

**B. Christ Hospital and the Individual Christ Hospital Defendants' Motion to Dismiss (Doc. 21)**

The Court will turn next to the Motion to Dismiss filed by Christ Hospital and the Individual Christ Hospital Defendants. (Doc. 21.) These Defendants raise several arguments in support of dismissal, but for the sake of judicial economy, the Court will focus on whether Norman's allegations are sufficiently pled and timely as these issues are dispositive.[22] Once again, Norman alleges (1) deprivation of equal protection; (2) conspiracy to violate civil rights; and (3) civil conspiracy. (*Id*. at PageID 23–26.) The Court will first turn to the issue of whether Norman alleges a sufficient factual basis to support her claims against Christ Hospital and the Individual Christ Hospital Defendants.[23]

A plaintiff suing under § 1983 must establish that she was denied a constitutional right and that the deprivation was caused by a defendant acting under color of state law. *Carl v. Muskegon Cnty.,* 763 F.3d 592, 595 (6th Cir. 2014) (citing *Jones v. Duncan,* 840 F.2d 359, 361–362 (6th Cir. 1988)). Private individuals, such as Christ Hospital and the Individual Christ Hospital Defendants, may be considered state actors if they exercise power "possessed by virtue of state law" and if they are "clothed with the authority of state law." *Id*. (citing *United States v. Classic,* 313 U.S. 299, 326 (1941)). "The question turns on whether the private individual's actions can be fairly attributed to the state." *Id*. (citing *Lugar v. Edmondson Oil Co., Inc.,* 457

---

[22] Christ Hospital and the Individual Christ Hospital Defendants alternatively argue that Norman's allegations fail on the merits. Specifically, they contend Norman has not alleged that they engaged in state action, and that even if she did so pled state action, she does not allege elements of a federal equal protection or federal conspiracy claim against them. Such a claim would require alleging facts supporting how Christ Hospital and/or the Individual Christ Hospital Defendants engaged in conduct targeting her on the basis of race or that she was treated differently than similarly situated white people. They also assert that Norman failed to plead facts that Christ Hospital and the Individual Christ Hospital Defendants shared a conspiratorial objective to deprive her of her constitutional rights or committed an overt act in furtherance of that plan.

[23] Claim 1 also fails on the basis that § 5309 does not provide a private right of action. *Freeman v. Fahey,* 374 F.3d 663, 665-66 (8th Cir. 2004) (citing *Gonzaga Univ. v. Doe,* 536 U.S. 273, 284 (2002)) (even when a statute contains right-creating language, a plaintiff must still show it "manifests an intent 'to create not just a private right but also a private remedy.'") Assuming this claim was brought pursuant to 42 U.S.C. § 1983, it fails for the reasons further discussed.

U.S. 922, 937 (1982)). "Our court has identified three tests to resolve the state-actor inquiry: the public-function test, the state-compulsion test, and the nexus test." *Id*. (citing *Ellison v. Garbarino,* 48 F.3d 192, 195 (6th Cir. 1995)).[24]

Under Sixth Circuit precedent, "[t]his Court has consistently held that damage claims against government officials rising from alleged violations of constitutional rights must allege, with particularly, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Robertson v. Univ. of Akron Sch. of Law*, No. 21-3768, 2022 WL 1836922, at *3 (6th Cir. 2022) (quoting *Heyne v. Metro Nashville Pub. Sch*., 655 F.3d 556, 564 (6th Cir. 2011) (emphasis in original)). In *Robertson*, the Court affirmed dismissal of the defendants' motion for judgment on the pleadings on the basis that the complaint grouped the defendants together in such a way that it failed to place individual defendants on notice of their liability. *Id*. This is so because conclusory allegations that "defendants" together violated a plaintiff's constitutional rights are insufficient. *Id*. Rather, a plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Iqbal*, 556 U.S. at 678).

Norman's § 1983 claims are insufficient to state a claim for relief. In her first and second causes of action, she does not allege plausible, specific factual allegations implicating Christ Hospital or the Individual Christ Hospital Defendants. Norman did not allege facts in the Complaint that support how the Christ Hospital and Individual Christ Hospital Defendants unconstitutionally violated her rights based on the City's Code enforcements. Aside from naming each Individual Christ Hospital Defendant as officers in an introductory section, Norman never mentions them by name again in her Complaint. (Doc. 1 at PageID 11.) As for Christ

---

[24] For the sake of judicial economy, the Court will not delve into whether Christ Hospital and the Individual Christ Hospital Defendants are state actors, which is an additional ground for dismissal raised by these Defendants.

Hospital, she alleges Christ Hospital was a "[s]takeholder" and "collaborator" in the Plan to develop area around Christ Hospital.  (*Id*. at PageID 11, 19.)  Yet, she does not allege facts that Christ Hospital or the Individual Christ Hospital Defendants developed, implemented, or adopted the alleged discriminatory Plan.  (*See* Doc. 1.)  In addition, she alleges that she obtained the deed to her property in January 2019, after the Plan was adopted.  Norman alleges that the City's enforcement of its building Codes was discriminatory, but she does not connect Christ Hospital or any of the Individual Christ Hospital Defendants to such alleged discriminatory enforcement.

Furthermore, Christ Hospital and the Christ Hospital Individual Defendants assert that the timeline Plaintiff set forth in her Complaint also establishes the implausibility of her claim. Specifically, she alleges she obtained the deed to her property in January 2019, and Cincinnati first presented the Plan to the Planning Commission in February 2017.  City Council passed the Plan in March 2018.  Given this timing, "no Christ Hospital Defendant could possibly, much less plausibly, have targeted Plaintiff for any reason.  She did not even live in the Plan area at those times.  In fact, she did not obtain the deed to her property *until January 2019, almost two years after Cincinnati presented the Plan and almost a year after City Council codified it*."  (Doc. 47 at PageID 841) (emphasis in original).[25]  Additionally, Norman improperly lumps all Defendants together and fails to allege specific facts as to "what each defendant did to violate" her constitutional rights.[26]  *Heyne*, 655 F.3d at 564.  "Conclusory allegations that 'the Defendants' violated [Norman's] constitutional rights are insufficient."  *Robertson,* 2022 WL 1836922, at *3. Norman's Complaint allegations here fall "well short" of the basic requirement that she plead

---

[25] Moreover, Norman bought the property with existing Code violations.

[26] In responding to the Motion to Dismiss, Norman attempts to offer new facts about Defendant Hayes.  (Doc. 32 at PageID 696, 700.)  As to the other Individual Christ Hospital Defendants, she states "[t]he roles of the other officers are not as evident but a corporation is controlled by its officers."  (*Id*. at PageID 700.)  The Court does not consider these new allegations but points out that the generality with respect to these named Defendants demonstrates that Plaintiff has failed to meet the basic pleading standards here.

what each individual defendant did to violate her constitutional rights to allow the court to draw a reasonable inference that each defendant is liable for the misconduct alleged. *Id*.

Norman's § 1983 claims are time-barred as well. The same timeline that applies to the City applies to the claims against Christ Hospital and the Individual Christ Hospital Defendants. Per her allegations, Christ Hospital's involvement as alleged ended in 2017 after it was an alleged stakeholder in the Plan. The Court has found that Plaintiff's claims arose in 2017 (or 2019 at the latest). (Doc. 1 at PageID 12.) Yet Norman sued in 2024, which is years beyond the applicable two-year statute of limitations on her claims, which was discussed in Section IV (A)(2). For the same reasons the allegations against the City and Individual City Defendant are time-barred, so too are the claims against Christ Hospital and the Individual Christ Hospital Defendants.

Finally, Norman's conspiracy claim arising under either federal or Ohio law fails.[27] "To state a claim under § 1985(3), a complaint must allege both a conspiracy and 'some class-based discriminatory animus behind the conspirators' action.'" *Newell,* 981 F.2d at 886; *Williams,* 2021 WL 6124556, at *4. As in *Williams*, Norman's complaint fails to allege "class-based, invidiously discriminatory animus." *Id*. (citing *Déjà Vu*, 805 F. App'x 379 at 384). Norman does not allege how Defendants conspired together to violate her rights, or how they were motivated on the basis of her race. She has also not identified any other similarly-situated individuals who were treated differently based upon race.

If this claim arises under Ohio law, it still fails as Ohio law requires "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Williams,* 700 N.E.2d at 868. Ohio law requires an "underlying unlawful act." *Id*. "[V]ague and conclusory allegations unsupported by

---

[27] Christ Hospital and the Individual Christ Hospital Defendants interpret this claim under Ohio law.

material facts in support of any conspiracy claim" are insufficient to state a claim. *Thomas*, 2023 WL 3742988, at *4. As with the City and Individual City Defendants, Norman's allegations against Christ Hospital and the Individual Christ Hospital Defendants are vague and conclusory. There is no factual support of a "malicious combination" of two or more persons. Thus, under Ohio law, this claim fails, too.

For these reasons, Christ Hospital and the Individual Christ Hospital Defendants' Motion to Dismiss (Doc. 21) is **GRANTED**.

### C. MACDC and Gibbs's Motion to Dismiss (Doc. 23)

MACDC and Gibbs move to dismiss the three claims asserted against them: (1) deprivation of equal protection; (2) conspiracy to violate civil rights; and (3) civil conspiracy. MACDC and Gibbs interpret the first cause of action as a § 1983 claim. (Doc. 23.) MACDC and Gibbs were mentioned scantly in Norman's 162-paragraph Complaint. (Doc. 23 at PageID 324; *see also* Doc. 1.) Plaintiff alleges that MACDC is a corporation doing business in Cincinnati and identifies it as a "collaborator" and "[s]takeholder" in the Plan to develop the Mt. Auburn Corridor. (Doc. 1 at PageID 11, 19.) Plaintiff also alleges that MACDC selected Gossman Design for development of the Plan. (*Id.* at PageID 19.) Gibbs is identified as the President and CEO of MACDC, with no other facts provided about her. (*Id*. at PageID 11.) As MACDC and Gibbs point out, there are no allegations about what either or both did to violate Plaintiff's civil rights. Plaintiff alleges that the Plan was adopted by the City, not MACDC or Gibbs, and she fails to plead facts about what a stakeholder or collaborator of the Plan is and how that resulted in City Code enforcement actions and alleged harassment by third parties. MACDC and Gibbs also note that Norman does not deny her property failed to comply with the Code the City was enforcing. These allegations fall short of the minimum pleading standards to

state a plausible claim for relief.

As these Defendants argue, Plaintiff's Complaint is "further undermined by the allegations she does ***not*** make." (Doc. 40 at PageID 753) (emphasis is original). Specifically, she does not allege that the City cited the Plan in its communications to Norman about Code violations; any developer reviewed the Plan and harassed Norman as a direct result; MACDC or Gibbs had any relationship with or communicated with the City, developers, or other stakeholders or collaborators to target Norman and her property; or any other property owners in the Plan overlay were affected or that Plaintiff was treated differently than similarly situated non-African American property owners in the area. (*Id*.) In sum, the Complaint fails to meet the basic pleading standard of alleging an equal protection violation and how these Defendants are liable. Rather, Norman has engaged in inappropriate group pleading. *Heyne*, 655 F.3d at 564. Dismissal of the § 1983 claims against MACDC and Gibbs is therefore appropriate.

Furthermore, the § 1983 claims are time-barred for the reasons set forth in Section IV(A)(2). Norman alleges MACDC and Gibbs were collaborators and stakeholders in the Plan, and MACDC selected Gossman Design for development of the Plan. (Doc. 1 at PageID 11, 19.) That alleged conduct took place in 2017. Even accepting Plaintiff's allegation that the Plan passed in 2019, the two-year statute of limitations has run. There is no factual basis to find that a continuing violation or other exception would be applicable here, particularly given the scant allegations against these Defendants.

Plaintiff's civil conspiracy claims fail, too, under either federal or state law. MACDC and Gibbs assert that the claim fails due to the vague and conclusory nature of the allegations. The Court agrees. Her allegations are too conclusory to state a claim for relief. She does not allege how being a "stakeholder" or "collaborator" in the Plan constitutes a conspiracy to violate

her civil rights.

For these reasons, MACDC and Gibbs' Motion to Dismiss (Doc. 23) is **GRANTED**.[28]

### D. Gossman Design and the Individual Gossman Defendants' Motion to Dismiss (Doc. 30)

Gossman Design and the Individual Gossman Defendants argue for dismissal of the three claims asserted against them: (1) deprivation of equal protection; (2) conspiracy to violate civil rights; and (3) and civil conspiracy.[29] (Doc. 30.) Gossman Design, Gossman, and Via-Gossman argue for dismissal on the first two claims on the basis that the allegations fall short of the minimum pleading standards and the statute of limitations. As to the third cause of action, Gossman Design, Gossman, and Via-Gossman argue that the claim does not allege they committed an underlying offense and that it is barred by the statute of limitations.[30]

The allegations against Gossman Design, Gossman, and Via-Gossman suffer from the same defects as the allegations asserted against MACDC and Gibbs. The Complaint scantly mentions Gossman Design, Gossman, and Via-Gossman, referring to the Individual Gossman Defendants as the "principals" of Gossman Design, and identifying that MACDC selected them to lead the development of the Plan. (Doc. 1 at PageID 11, 12, 19.) The Complaint "alleges only a single affirmative act by the Gossman Defendants: leading the development of an urban renewal project." (Doc. 49 at PageID 892 (citing Doc. 1 at PageID 19.))

---

[28] MACDC and Gibbs argue that the first two claims fail because Plaintiff has not demonstrated MACDC and Gibbs were acting under color of state law; Plaintiff failed to allege sufficient facts to support constitutional claims; there is no causation between the alleged actions of MACDC and Gibbs and the alleged deprivation of rights; and Norman's claims are time-barred. As to the third claim, MACDC and Gibbs argue that the claim fails as a matter of law because the allegation are insufficient to state a claim. Although these arguments are thoroughly presented and well-taken, for the sake of judicial economy, the Court limits its analysis to issues above.

[29] Defendants' Reply brief interprets this claim under Ohio law. Under state or federal law, the claim fails.

[30] Gossman Design and the Individual Gossman Defendants interpret the third cause of action as brought under Ohio law. Under either Ohio or federal law, the claim fails. They also assert that the Complaint fails on the basis of no state action, no conspiratorial objective, and the statute of limitations. (Doc. 30 at PageID 605.) For the sake of judicial economy, the Court limits its analysis to the above.

As with MACDC and Gibbs, Norman has failed to state a § 1983 claim for relief and such claims are be time-barred.  She improperly engages in group pleading and fails to specifically allege unlawful conduct attributable to each Gossman Design, Gossman, and Via-Gossman, warranting dismissal of these claims.  *See Heyne*, 655 F.3d at 564.  Furthermore, the first two claims are time-barred for the same reasons discussed with respect to MACDC and Gibbs.  Lastly, the third claim is vague and conclusory and fails to state a claim for relief, as this Court has found with respect to the other Defendants.  As Gossman Design and the Individual Gossman Defendants assert: "Norman's complaint is . . .  devoid of substantive allegations" against them.  (Doc. 30 at PageID 608.)  For these reasons, the Motion to Dismiss filed by Gossman Design and the Individual Gossman Defendants (Doc. 30) is **GRANTED**.

### E.  DiSalvo Development and Pete DiSalvo's Motion for Judgment on the Pleadings (Doc. 41)

DiSalvo Development and Pete DiSalvo move for judgment on the pleadings on the three claims asserted against them: (1) deprivation of equal protection; (2) conspiracy to violate civil rights; and (3) and civil conspiracy.  (Doc. 41.)  These claims suffer from the same deficiencies as those raised against MACDC and Gibbs.[31]

DiSalvo Development and Pete DiSalvo move for judgment on the pleadings on the basis that the facts implicating them are insufficient to support a claim for which relief can be granted under Rule 12(c).  DiSalvo Development and Pete DiSalvo are mentioned only in passing in the Complaint.  DiSalvo Development is listed as a "collaborator" in the Plan and for conducting an "audit and marketing assessment" for the Plan.  (Doc. 1 at PageID 12, 19.)  As to Pete DiSalvo, Plaintiff alleges that he is the president of DiSalvo Development.  (*Id*. at PageID 12.)  As

---

[31] DiSalvo Development and Pete DiSalvo interpret the third claim as a § 1983 conspiracy claim.  They also note that Plaintiff appeared to confuse them with Gossman Design, Gossman, and Via-Gossman in responding to their Motion for Judgment on the Pleadings.  (Doc. 51.)

DiSalvo Development and Pete DiSalvo point out:

> The facts as pled by Plaintiff fails to establish *how* DiSalvo's conduct of performing a simple market assessment deprived Plaintiff of her Equal Protection rights, or constituted acceptance of a conspiratorial objective.  Frankly, plaintiff's Complaint is devoid of the most basic answers one would expect in any civil rights/conspiratorial claim: *who, what, where, when* and *why*.

(Doc. 51 at PageID 910.)

DiSalvo Development and Pete DiSalvo assert that Plaintiff's Complaint is insufficient to give notice to the Defendants as to what claims are alleged, nor does it contain sufficient factual matter to render the legal claims plausible.  *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).    Further, the Complaint improperly groups all Defendants together.  *See, e.g., Robertson v. Univ. of Akron Sch. of Law*, No. 21-3768, 2022 WL 1836922, at *4 (6th Cir. June 3, 2022) (affirming dismissal of § 1983 claims for failure to allege sufficient allegations of a constitutional violation); *see also Heyne*, 655 F.3d at 564.

DiSalvo Development and Pete DiSalvo assert that the second claim for federal conspiracy fails to allege DiSalvo Design and Pete DiSalvo had a conspiratorial objective with other Defendants, which is well-taken.  Finally, DiSalvo Development and Pete Salvo assert that the third claim for civil conspiracy fails due to vagueness, lack of specificity, and conclusory allegations.  *Guiterrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987).  Plaintiff failed to plead a sufficient factual basis to render her claims plausible.  Furthermore, Plaintiff's § 1983 claims are time-barred for the reasons set forth with respect to the other Defendants.  As such, the Motion for Judgment on the Pleadings (Doc. 41) will be **GRANTED**.

### F.  GBSC and the Individual GBSC Defendants' Motion to Dismiss (Doc. 31)

GBSC and the Individual GBSC Defendants move to dismiss the three claims pending against them: (1) deprivation of equal protection; (2) conspiracy to violate civil rights; and (3)

civil conspiracy. (Doc. 31.) As GBSC and the Individual GBSC Defendants point out, they are mentioned only in passing in the Complaint, akin to many of the other Defendants. Norman refers to GBSC as a corporation and "collaborator" in the Plan, and she identifies the positions of the Individual GBSC Defendants, all of whom are trustees, except for Vernon, who is the Chancellor. (Doc. 1 at PageID 11.) The only other mention of the GBSC and the Individual GBSC Defendants is referring to them as "[s]takeholders" in the Plan. (*Id*. at PageID 19.)

The Individual GBSC Defendants move to dismiss on the basis that Norman failed to effectuate service on them.[32] This argument is well-taken. Rule 4 of the Federal Rules of Civil Procedure governs the timeline for effecting proper service. Pursuant to Rule 4(c)(1), "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)." Fed. R. Civ. P. 4(c)(1). If the plaintiff fails to serve a defendant within 90 days after the complaint is filed, "the court—on motion or on its own after notice to the plaintiff— must dismiss the action without prejudice against that defendant or order that service be made within a specified time." The court must extend the time period, however, if the plaintiff shows good cause for the failure. *Id*.; *Cottrell v. DeVillers*, No. 2:20-CV-5354, 2022 WL 2340884, at *5–6 (S.D. Ohio June 29, 2022).

The Individual GBSC Defendants assert that dismissal is appropriate because they were not properly served. They assert nothing of record shows these officials were served with process in their individual capacities. The Affidavits of Service indicates that the Individual GBSC Defendants were served on July 16, 2024 at the same time, 12:25 p.m., by delivering and leaving with an individual who holds the title of "Facility Technician." (Doc. 6-10 to 6-24 at PageID 129–144.) Under Rule 4(e), an individual defendant must be served by any method

---

[32] They also argue that Norman failed to allege facts against the Individual GBSC Defendants in their official or individual capacities.

prescribed by state law, or by (A) delivering a copy of the summons and complaint to the individually personally; (B) leaving a copy of the summons and complaint at the individual's dwelling or usual place of abode with someone of suitable age and discretion who abides there; or (C) delivering a copy of the summons and complaint to an agent authorized by appointment or law to receive service of process. Hand delivery to a facility technician at the God's Bible School and College is not valid of service of process to the Individual GBSC Defendants who are sued in their individual capacities.

In responding, Plaintiff argues that that the Individual GBSC Defendants waived the defense of inadequate service of process by counsel filing a notice of appearance and filing motions. Filing motions does not cause a defendant to waive the defense of lack of personal jurisdiction. *Cottrell v. DeVillers*, No. 2:20-cv-5354, 2022 WL 2340884, at *8 (S.D. Ohio June 29, 2022). Additionally, "to preserve her personal jurisdiction defense ..., a defendant must comply with Rule 12, which requires only that she include her defenses in her first responsive pleading." *Id.* (citing *Blessing v. Chandrasekhar*, 988 F.3d 889, 899 (6th Cir. 2021)). Yet, a "defendant may waive her defense if the district court, after 'consider[ing] all of the relevant circumstances ...' determines that the defendant's litigation conduct gave the plaintiff a "reasonable expectation" that the defendant intended to "defend the suit on the merits" or the conduct "cause[d] the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Id.* (citing *Gerber*, 649 F.3d at 519 and *King*, 694 F.3d at 659). "Filing a notice of appearance does not, on its own," however, "cause a defendant to waive her personal jurisdiction defense." *Id.* at 894. The Individual GBSC Defendants did not waive improper service here by filing their Motion to Dismiss.

Norman failed to demonstrate good cause for failure to serve the Individual GBSC

Defendants. She is represented by counsel. She left the summons with a facility technician and made no further efforts to effectuate service upon the individuals. She gives no reason for needing additional time or why she did not properly serve the individuals. Thus, because she failed to serve the Individual GBSC Defendants and time has lapsed between the filing of the Complaint and the present, dismissal pursuant to Rule 4(m) of the claims against the Individual GBSC Defendants is warranted. The claims against the Individual GBSC Defendants are dismissed without prejudice under Rule 12(b)(5).

The claims remaining against GBSC in their official capacities are insufficient to state a claim due to failing to meet the minimum pleading standard, as this Court has found with respect to MACDC and Gibbs, Gossman Design, Gossman, and Via-Gossman, and DiSalvo Development and Pete DiSalvo. Plaintiff fails to state a claim for which relief may be granted because the allegations are too vague and conclusory. The bare-bones allegations relating to GBSC and the Individual GBSC Defendants do not support a cause of action. Labeling GBSC as a "collaborator" and "[s]takeholder" does not provide a factual basis to inform GBSC or the Individual GBSC Defendants of the conduct they allegedly took giving rise to Plaintiff's claims. It also is insufficient to allege a conspiracy. Furthermore, the § 1983 claims are time-barred for the reasons set forth in this Order with respect to the aforementioned other Defendants.[33] In sum, the allegations are conclusory, speculative, and fall short of satisfying the bare minimum pleading standard required to survive a motion to dismiss.

For these reasons, GBSC and the Individual GBSC Defendants' Motion to Dismiss (Doc. 31) is **GRANTED**.

---

[33] GBSC and the Individual GBSC Defendants raise the alternate arguments that the Complaint fails to allege state action and that the claims are barred by the statute of limitations. The Court notes that in responding to GBSC and the Individual GBSC Defendants' Motion to Dismiss, Norman asserts that she pled the tort of extortion as a fourth cause of action. That claim was not alleged against GBSC or the Individual GBSC Defendants. The Court limits its analysis to the above for the sake of judicial economy.

## IV.    CONCLUSION

For the foregoing reasons, the Motions to Dismiss filed by the City and the Individual City Defendants, Christ Hospital and the Individual Christ Defendants, MACDC and Gibbs, Gossman Design and the Individual Gossman Defendants, and GBSC and the Individual GBSC Defendants (Docs. 21, 23, 24 30, 31) are **GRANTED**.  DiSalvo Development and Pete DiSalvo's Motion for Judgment on the Pleadings (Doc. 41) is **GRANTED**.  This case will be terminated from the docket of this Court.

**IT IS SO ORDERED.**

BY THE COURT:


S/Susan J. Dlott
Susan J. Dlott
United States District Judge